UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

    v.                                                 Case No. 21-cr-0241-bhl-3

JAVIER MERCED,

          Defendant.

## ORDER

On September 21, 2021, Drug Enforcement Agency Task Force Officer Todd Higgins filed, at best, a misleading affidavit that precipitated the search of 3466 South 62nd Street in Milwaukee, a single-family residence belonging to Javier Merced. (ECF No. 92-1.) Citing deficiencies in the affidavit, Merced moved to suppress evidence collected pursuant to the warrant and also requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Magistrate Judge Nancy Joseph denied the motion for a *Franks* hearing and recommended the Court similarly deny the motion to suppress. (ECF No. 115.) Merced filed timely objections, reprising his request for a *Franks* hearing and highlighting alleged errors in the report and recommendation. (ECF No. 121.) While Merced has shown that Higgins' affidavit included false statements by omission, he has not shown that the inclusion of the omitted material would have vitiated probable cause. The Court will, therefore, adopt the report and recommendation and deny Merced's motions.

## BACKGROUND

The case against Javier Merced first took shape in April of 2019, when Jose Alberto Silva-Jimenez offered to sell an ounce of heroin to a confidential source (CS). (ECF No. 115 at 2.) Cooperating with law enforcement, CS accepted Silva-Jimenez's offer and made a controlled purchase. (*Id.*) CS also made two subsequent controlled purchases from Silva-Jimenez on May 22, 2019 and July 22, 2019. (*Id.* at 3.) At some point between July 2019 and March 2020, Silva-Jimenez returned to his home in Puerto Rico, but he provided CS with the phone number for a "worker" who could conduct heroin transactions in his absence. (*Id.*) On March 4, 2020, this

"worker," who turned out to be Javier Merced, met CS at an Amoco gas station in Milwaukee and handed over three baggies of heroin. (*Id.*) Merced then drove a BMW registered to Silva-Jimenez back to Merced's home at 3466 South 62nd Street. (*Id.*) CS never again bought heroin from Merced directly. Instead, Silva-Jimenez set CS up with his Chicago supplier, Rene Suarez, who facilitated seven additional purchases. (*Id.* at 3-4.)

In early 2021, CS called Suarez to complain about the quality of the heroin he received in February 2021. (*Id.* at 4.) On March 9, 2021, Suarez responded. (*Id.*) He promised to travel to Milwaukee personally and provide CS with a sample to ensure that CS was satisfied before agreeing to any future transactions. (*Id.*) On March 10, 2021, investigators located Suarez as he traveled from Chicago to Milwaukee and tailed him to 3466 South 62nd Street. (*Id.*) His vehicle remained parked at the residence for 14 minutes, though no investigator saw him interact with Merced, or anyone else for that matter. (*Id.*) After his brief pitstop outside Merced's home, Suarez went directly to his meeting with CS and presented a small baggie containing about 1.79 grams of heroin. (*Id.* at 5.) E-911/GPS data later revealed that Suarez traveled to South Milwaukee on at least three additional occasions—April 2, 2021, April 11, 2021, and May 8, 2021. (*Id.*)

Continuing to pursue evidence, investigators next obtained a warrant to intercept all wire and electronic communications Suarez made from July through September 2021. (ECF No. 121 at 5.) During this time, they picked up only one conversation between Suarez and Merced. On August 9, 2021, Merced called Suarez and said: "Hey, I met up with my guy from here that I had working with that paint, and he is willing to work." (*Id.*) Suarez asked: "You have him?", and Merced replied, "Yes." (*Id.*) Suarez then said he would "go tomorrow," to which Merced responded, "Okay." (*Id.*)

Incorporating much of this background information, on September 21, 2021, Task Force Officer Todd Higgins filed an affidavit in support of a search warrant for 3466 South 62nd Street. (ECF No. 92-1.) The affidavit sought safes, duffle bags, airline tickets, jewelry, bank account records, money ledgers, drug distribution or customer lists, and other documents noting the price, quantity, and time of drug sales. (*Id.* at 4-5.) Notably, despite the absence of corroborative evidence, Higgins represented that "SUAREZ made reoccurring trips to . . . MERCED's residence" on April 2, 2021, April 11, 2021, and May 8, 2021. (*Id.* at 22.) Higgins

also claimed, without support, that Suarez's trips to Merced's home lasted between 45 and 90 minutes. (*Id.*)

Magistrate Judge Nancy Joseph authorized a warrant, and investigators promptly executed it. (ECF No. 130 at 2.) During their search of Merced's home, those investigators uncovered several cell phones, identifying documents, a large digital scale, a money counter, U.S. currency, a Ruger SR40c .40 caliber semi-automatic pistol, and a box of Winchester .40 caliber bullets. (*Id.* at 2.) On November 23, 2021, a grand jury sitting in the Eastern District of Wisconsin indicted Merced on one count of conspiracy to distribute controlled substances, one count of distributing heroin within 1,000 feet of a school, and possession of a firearm as a previously convicted felon. (ECF No. 115 at 1.) Merced pled not guilty, requested a *Franks* hearing, and moved to suppress evidence collected pursuant to the warrant. (*Id.* at 1-2.)

Judge Joseph considered Merced's arguments, but ultimately refused to hold a *Franks* hearing and recommended denying the motion to suppress. (*Id.* at 18.) She reasoned that, even assuming Merced had identified falsehoods and omissions, Higgins' affidavit still supported probable cause to issue a search warrant. (*Id.* at 6-17.) Merced filed timely objections and now asks this Court to overrule Judge Joseph's report and recommendation. (ECF No. 121.)

## LEGAL STANDARD

A federal court reviews, *de novo*, "those portions of [a Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1)(C). Unchallenged portions of the report are reviewed only for clear error. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

## ANALYSIS

Merced's objections identify two alleged errors: (1) Judge Joseph improperly found Higgins' affidavit facially valid, and (2) Judge Joseph improperly denied a *Franks* hearing. Because neither objection carries the day, the Court will adopt Judge Joseph's report and recommendation and deny the renewed motion for a *Franks* hearing.

## I.     The Affidavit Facially Established Probable Cause.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "When, as here, an affidavit is the only evidence presented to a judge to support a search warrant, 'the validity of the warrant rests solely

on the strength of that affidavit.'" *United States v. Mykytiuk*, 402 F.3d 773, 775-76 (7th Cir. 2005) (quoting *United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003)). "A search warrant affidavit establishes probable cause when, based on the totality of the circumstances, it 'sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.'" *Id.* at 776 (quoting *Peck*, 317 F.3d at 756). "[P]robable cause is a low bar that can be cleared without a *prima facie* showing of criminal activity." *United States v. Rees*, 957 F.3d 761, 769 (7th Cir. 2020).

"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before [her], there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (quoting *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002)). That decision is afforded great deference. *See United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). Thus, a reviewing court should "uphold a finding of probable cause so long as the issuing judge had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010). Reversal is appropriate "only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999). "[D]oubtful cases should be resolved in favor of upholding the warrant." *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000).

Merced first argues that, in lieu of concrete facts, Judge Joseph impermissibly stacked inference upon inference to create the teetering foundation on which she rested her finding of probable cause. Courts have cautioned against "arriv[ing] at probable cause simply by piling hunch upon hunch." *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004). At the same time, a judge considering an affidavit may draw reasonable inferences without running afoul of the Fourth Amendment. *See United States v. Carmel*, 548 F.3d 571, 575 (7th Cir. 2008). Here, though dependent on a few inductive leaps, the affidavit Higgins presented permits the reasonable inference that drug dealing paraphernalia might have existed in Merced's home at the time law enforcement executed their search. Immediately prior to delivering a sample of heroin to CS, Suarez visited a residence belonging to Merced, a known heroin dealer with direct

connections to Silva-Jimenez—the man who had first introduced Suarez and CS. Suarez returned to Merced's house on numerous occasions.[1] And they even discussed "paint" on a phone call, which Higgins swore he understood to be code for "heroin." (ECF No. 115 at 15.) Read in totality, this is enough to establish at least a fair probability that Merced's home contained the contraband alleged.

But Merced believes that by the time investigators sought a search warrant, too much of the evidence implicating him had gone stale. While temporality is a factor in probable cause determinations, it "is less critical when the affidavit refers to facts that indicate ongoing[,] continuous criminal activity." *United States v. Pless*, 982 F.2d 1118, 1126 (7th Cir. 1992). Merced was a recurring character in this heroin sting. Though 18 months removed from the evidence of his direct dealing, the affidavit suggested his continued involvement in the criminal enterprise. He may have alibies. They may even be good ones. But an "affidavit need not [] negate every argument that can be asserted against [probable cause]." *United States v. Rambis*, 686 F.2d 620, 623 (7th Cir. 1982).

Merced also claims that the affidavit supplied no reason to believe the byproducts of drug dealing existed *in his home*. After all, the only sale he ever personally executed occurred at an Amoco gas station. And even when Suarez parked outside his residence, no one ever saw the two physically interact. Again, though, the totality of the facts alleged allow a reasonable inference that Merced participated in the heroin conspiracy and that his home was at least an occasional place of repose for other members of that conspiracy. That provides the nexus between the criminal contraband and the place to be searched. *See United States v. Zamudio*, 909 F.3d 172, 176 (7th Cir. 2018).

## II. Although Merced Has Shown that the Affidavit Contained False Statements, He is Not Entitled to a *Franks* Hearing Because He Has Not Shown that Those Statements were Necessary to Support a Finding of Probable Cause.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court recognized a criminal defendant's right, in limited circumstances, to challenge the veracity of statements made in an affidavit supporting a search warrant. The Court held that a defendant may dispute the accuracy of an allegedly faulty affidavit at a so-called *Franks* hearing provided he first makes a "'substantial preliminary showing' that: (1) the affidavit contained a materially

---

[1] While this statement is a mischaracterization of the actual facts, the question at this stage is whether the affidavit supplied probable cause *on its face*. Because nothing in the affidavit gave reason to doubt Higgins' averment, the Court treats that averment as true for purposes of the facial inquiry.

false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (quoting *Franks*, 438 U.S. at 155-56). This standard also applies when an affidavit is challenged on the grounds that key facts were omitted. *See United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984).

Merced satisfies the first two preconditions for a *Franks* hearing. He identifies a false statement in Higgins' affidavit, which Judge Joseph generously dubbed an "imprecision." (ECF No. 115 at 9.) In his affidavit, Higgins swore:

> Both location data (i.e., E-911/GPS information) derived SUAREZ's cellular device and physical surveillance have disclosed that SUAREZ made reoccurring trips to the **PREMISES**, which is MERCED's residence. . . . These trips were short, ranging from 45 minutes to 1.5 hours.

(ECF No. 92-1 at 22.) This statement is simply untrue. In fact, E-911 data, on its own, is not even capable of pinpointing an individual's location with such precision. (ECF No. 92-2 at 3.) For example, contrary to Higgins' claim, on April 2, 2021, even the narrowest possible interpretation of the E-911 data only briefly puts Suarez within the same 104,000 square meter circle as Merced's home. (*Id.* at 8.) There is no evidence he actually visited the residence. And there is nothing to suggest he spent anywhere near 45 minutes in the general vicinity. The data from April 11, 2021 is even less impressive. It reflects a single location ping for a 2 million square meter area that does not even encompass Merced's home. (*Id.* at 6.) And because only one ping (and therefore only one temporal data point) exists, it is impossible to know how long Suarez spent in that location. The data collected on May 8, 2021 is equally defective. It situates Suarez in South Milwaukee for about an hour and a half, mostly in a region that, again, does not include Merced's home. (*Id.* at 7.) Higgins wrote that the data "disclosed . . . reoccurring trips to . . . MERCED's residence." (ECF No. 92-1 at 22.) What it actually disclosed was multiple visits to South Milwaukee, which is not Merced's fiefdom, and was also, of course, part of Suarez's sales territory. Higgins knew or should have known this. Regardless of whether this narrative was intentionally false or simply the result of reckless drafting, Merced has succeeded in the first two steps of making a substantial preliminary showing. *See United States v. Schultz*, 586 F.3d 526, 531 (7th Cir. 2009) (a defendant shows that an affiant acted with reckless disregard for the truth if he knew or should have known that the information in the affidavit was false); *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014) ("An officer's omission from

the probable cause affidavit of known and substantial adverse information . . . is sufficient to support a reasonable inference of recklessness.").

Yet despite Higgins' clear lack of candor, Merced is not entitled to a *Franks* hearing because he cannot complete the third step. The record confirms that "probable cause to issue the warrant would exist even if the false statement[s] or material omission[s] were corrected." *United States v. Santiago*, 905 F.3d 1013, 1025 (7th Cir. 2018). Excise the bunk location data, and the affidavit still supports issuance of a warrant. Probable cause is an elastic concept. It does not, as its name might suggest, require a showing that some fact *probably* or more likely than not exists. *See United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012) (Probable cause does not require "a probability that exceeds 50 percent."). Rather, it "is established when, based on the totality of the circumstances, [an] affidavit sets forth sufficient evidence to persuade a reasonably prudent person that a search will uncover evidence of a crime." *United States v. Carson*, 582 F.3d 827, 831 (7th Cir. 2009). In this case, the affidavit connected Merced, a known heroin dealer, to Suarez, a known supplier. On one occasion, the latter stopped at the former's house right before making a sale. This is, admittedly, not much. But the Seventh Circuit has previously found "the general notion that drug dealers are likely to keep evidence of their crimes in their homes . . . sufficient to sustain a search of a residence even when the affidavit contained specific information that the suspected drug dealer did *not* use his residence for selling drugs." *United States v. Bradford*, No. 19-cr-162, 2019 WL 8512460, at *3 (E.D. Wis. Nov. 15, 2019) (quoting *United States v. Lamon*, 930 F.2d 1183, 1186, 1190 (7th Cir. 1991)). Under the circumstances, then, Merced cannot prove that the false statements he identified were necessary to the determination of probable cause. He is, therefore, not entitled to a *Franks* hearing.

## CONCLUSION

After a *de novo* review of Magistrate Judge Joseph's report and recommendation, ECF No. 115, the Court overrules Merced's objections.

Accordingly,

**IT IS HEREBY ORDERED** that Merced's Motion to Suppress, ECF No. 92, is **DENIED**.

**IT IS FURTHER ORDERED** that Merced's requests for a *Franks* hearing, ECF Nos. 92 & 121, are **DENIED**.

Dated at Milwaukee, Wisconsin on February 21, 2023.

s/ *Brett H. Ludwig*

BRETT H. LUDWIG
United States District Judge